## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____

| | |
|---|---|
| EMPIRE HEALTH FOUNDATION | ) |
| 1020 W. Riverside Ave. | ) |
| Spokane, WA 99201 | ) |
| | ) |
| DEACONESS MEDICAL CENTER | ) |
| 800 W 5th Ave. | ) |
| Spokane, WA 99204 | ) |
| | ) |
| VALLEY HOSPITAL MEDICAL CENTER | ) |
| 12606 E Mission Ave. | ) |
| Spokane, WA 99216 | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| | ) |
| v. | )      Civil Action No. ____ |
| | ) |
| | ) |
| SYLVIA M. BURWELL, IN HER | ) |
| OFFICIAL CAPACITY AS SECRETARY | ) |
| OF HEALTH AND HUMAN SERVICES | ) |
| 200 Independence Avenue, S.W. | ) |
| Washington, D.C. 20201 | ) |
| | ) |
| Defendant, | ) |

_____)

## COMPLAINT

## JURISDICTION AND VENUE

1.     This action arises under Title XVIII of the Social Security Act, as amended

(42 U.S.C. §1395 et. seq.), hereinafter referred to as the "Medicare Act" or the

"Act", and the Administrative Procedure Act, 5 U.S.C. § 706.

2.      This Court has jurisdiction under 42 U.S.C. §1395oo(f), 28 U.S.C. § 1331,

and 28 U.S.C. § 1361.  Venue lies in this judicial district pursuant to 42 U.S.C.

§1395oo(f), and 28 U.S.C. § 1391(e).

3.      This is a civil action brought to obtain judicial review of final decision

rendered by the Provider Reimbursement Review Board ("PRRB"), acting as a

component of the United States Department of Health and Human Services

("HHS"). The decision for which judicial review is hereby sought is PRRB Case

No. 09-2071GC, dated October 28, 2015. This decision remanded the cases back to

the intermediary for recalculation of the disproportionate share hospital (DSH)

payment adjustment in accordance with the provisions of CMS Ruling 1498-R.

This decision further dismissed some of the appeals at issue in this case as being

prematurely filed from a Federal Register notice.

4.      CMS Ruling 1498-R, the validity of which is being challenged in this case,

mandated a significant reduction in the amount of Medicare reimbursements to be

paid to the plaintiff hospitals.  As a result of the PRRB's unlawful application of

CMS Ruling 1498-R and its improper dismissal, plaintiffs will suffer significant

financial losses.

**PARTIES**

5.      Plaintiffs, Empire Health Foundation, Deaconess Medical Center, and

Valley Hospital Medical Center, file this appeal for additional reimbursement for

services rendered by Deaconess Medical Center for fiscal years 2007 and 2008, and Valley Hospital Medical Center for fiscal years 2005-2008.  During the fiscal years involved in this case, Empire Health Services owned both hospitals.  Empire Health Foundation is bringing this appeal as the successor-in-interest to Empire Health Services. Empire Health Foundation is a charitable entity based in Spokane, Washington.

6.      At all relevant times, Deaconess Medical Center (Medicare Provider Number 50-0044) and Valley Hospital Medical Center (Medicare Provider Number 50-0119) had Medicare provider agreements with the Secretary of Health and Human Services and were eligible to participate in the Medicare program.

7.      Defendant, Sylvia M. Burwell, Secretary of the Department of Health and Human Services ("Secretary"), or her predecessors in office, is the federal officer responsible for the administration of the Medicare program.  Defendant Burwell is sued in her official capacity.

## MEDICARE STATUTORY AND REGULATORY BACKGROUND

8.      The Medicare program was established to provide health insurance to the aged and disabled. 42 U.S.C. §§1395-1395cc. The Centers for Medicare and Medicaid Services (CMS), formerly the Health Care Financing Administration (HCFA), is the operating component of the Department of Health and Human Services (HHS) charged with administering the Medicare program.

9.     The operating costs of inpatient hospital services are reimbursed by Medicare primarily through the Prospective Payment System (PPS). 42 U.S.C. §1395ww(d). The PPS statute contains a number of provisions that adjust reimbursements based on hospital-specific factors. See 42 U.S.C. §1395ww(d)(5). This case involves the hospital-specific disproportionate share (DSH) adjustment, which requires the Secretary to provide increased PPS reimbursement to hospitals that serve a "significantly disproportionate number of low-income patients." 42 U.S.C. § 1395ww(d)(5)(F)(i)(I).

10.     Whether a hospital qualifies for the DSH adjustment, and how large an adjustment it receives, depends on the hospital's "disproportionate patient percentage (DPP)." 42 U.S.C. § 1395ww(d)(5)(F)(v). The DPP is the sum of two fractions, the "Medicare and Medicaid fractions," for a hospital's fiscal period. 42 U.S.C. §1395ww(d)(5)(F)(vi). Hospitals whose DSH percentages meet certain thresholds receive an adjustment which results in increased PPS payments for inpatient hospital services. 42 U.S.C. §1395ww(d)(5)(F)(ii).

11.     The first fraction's numerator is the number of a hospital patient days for such period who (for such days) were entitled to both Medicare Part A and Supplemental Security Income (SSI) benefits, and the denominator is the number of patient days for patients entitled to Medicare Part A. Id.  This case involves this

first fraction, which is hereinafter referred to as the SSI fraction, or the Medicare fraction.

12.     The second fraction's numerator is the number of hospital patient days for patients who (for such days) were eligible for medical assistance under a State Plan approved under Title XIX for such period but not entitled to benefits under Medicare Part A, and the denominator is the total number of the hospital's patient days for such period. Id.  The second fraction is frequently referred to as the Medicaid fraction, which is not directly at issue in this case.

13.     The SSI program is administered by the Social Security Administration (SSA); therefore, identifying patients who were entitled to SSI during their hospitalization requires access to SSA's SSI data. To implement the DSH legislation, the number of patient days for those patients entitled to both Medicare Part A and SSI is determined by matching data from the MEDPAR file, which is Medicare's database of hospital inpatients, with a file created for CMS by SSA to identify SSI-eligible individuals.

14.     CMS' payment and audit functions under the Medicare program are contracted out to insurance companies known as fiscal intermediaries. Fiscal intermediaries determine payment amounts due the providers under Medicare law and regulations.  42 U.S.C. §1395h, 42 C.F.R. §§413.20(b) and 413.24(b).

Although the intermediary calculates the DPP, it is CMS that computes the SSI fraction.

15.     At the close of its fiscal year, a provider must submit a cost report to the fiscal intermediary showing the costs it incurred during the fiscal year and the portion of those costs to be allocated to Medicare. 42 C.F.R. §413.20. The fiscal intermediary reviews the cost report, determines the total amount of Medicare reimbursement due the provider and issues the provider a Notice of Program Reimbursement (NPR). 42 C.F.R. §405.1803.

16.     A provider dissatisfied with the intermediary's final determination of total reimbursement may file an appeal with the Provider Reimbursement Review Board (PRRB) or (Board) within 180 days of the issuance of the NPR. 42 U.S.C. §1395oo(a); 42 C.F.R. §405.1835.

### CMS RULING 1498-R

17.     On April 28, 2010, CMS issue Ruling 1498-R. This Ruling applies to appeals in any of the three following categories:  1) when a provider challenges CMS' data matching process for matching Medicare and SSI eligibility data in determining the SSI fraction; (2) when a provider challenges the exclusion from the disproportionate patient percentage (DPP) of non-covered inpatient hospital days (for example, Medicare secondary payer (MSP) days or exhausted benefit

(EB) days); or (3) when a provider challenges the exclusion from the DPP of labor/delivery room (LDR) inpatient days.

18.   Pursuant to CMS Ruling 1498-R, any appeal involving any of the above three categories must be remanded by the Board to the fiscal intermediary.  The Ruling further requires the fiscal intermediary to revise the SSI fraction to include certain inpatient hospital days (e.g. MSP and EB days) in the SSI fraction.  The Ruling further requires the intermediary to re-compute the SSI's fraction using the revised data matching process approved by the district court in *Baystate Medical Center v. Leavitt*, 545 F. Supp. 2d 20, *as amended*, 587 F. Supp. 2d 37, 44 (D.D.C. 2008).

19.   CMS-1498-R further states that re-computation of the SSI fraction in accordance with that directive -

> *eliminates any actual case or controversy regarding the hospital's previously calculated SSI fraction and DSH payment adjustment and thereby renders moot each properly pending claim in a DSH appeal involving the hospital's previously calculated SSI fraction, [p]rovided that such claim otherwise satisfies the applicable jurisdictional and procedural requirements of section 1878 of the Act, the Medicare regulations, and other agency rules and guidelines.*

20.   CMS Ruling 1498-R further provides as follows:

> *The Ruling provides notice of the determination of the Centers for Medicare & Medicaid Services (CMS) that the Provider Reimbursement Review Board (PRRB) and the other Medicare administrative appeals tribunals lack jurisdiction over provider appeals of any of three issues described [therein] regarding the calculation of the Medicare disproportionate share hospital (DSH) payment adjustment.*

21.     The regulations at 42 C.F.R. §401.108 state that CMS Rulings are binding on all CMS components. With respect to the scope of the Board's legal authority, the regulation at 42 C.F.R. §405.1867 states that, ""[*i]n exercising its authority to conduct proceedings... the Board must comply with all the provisions of Title XVIII of the Act and regulations issued thereunder, as well as CMS Rulings issued under the authority of the Administrator as described in § 401.108 ...*"

## SUBSTANTIVE INVALIDITY OF CMS RULING 1498-R

22.     CMS Ruling 1498-R is substantively invalid in that it requires the inclusion of certain additional days in the SSI fraction, such as exhausted benefit (EB) days, and Medicare secondary payer (MSP) days.

23.     The relevant statute requires entitlement to Part A as a condition of inclusion in the SSI fraction.  With respect to EB days, the Medicare statute provides that the Part A benefit for inpatient hospital services covers only a specified number of days per spell of illness. 42 U.S.C. § 1395d(a)(1); 42 C.F.R. § 409.61(a). Therefore, payment under Part A may not be made for services rendered after those limits have been exhausted. 42 U.S.C. § 1395d(b)(1).

24.     Similarly, under the Medicare MSP provisions, payment may not be made under Medicare Part A "*when payment has been made or can reasonably be expected to be made*" under a health insurance plan or liability insurance policy. 42

U.S.C. § 1395y(b)(2)(A). There is an exception under which CMS is authorized to make "conditional payments" if the primary payer has not made or cannot reasonably be expected to make prompt payment. However, upon receipt of payment from the primary payer, the beneficiary or provider must reimburse the Medicare trust fund for these conditional payments. 42 U.S.C. § 1395y(b)(2)(B)(ii).

25.     This statutory scheme clearly establishes that patients to whom the MSP and EB provisions are applied are not "entitled to benefits under Part A."  In *Jewish Hosp. v. Secretary of Health & Human Servs.*, 19 F.3d 270 (6th Cir. 1994), the court held that the word "entitled" as used in the SSI fraction means that the beneficiary "*possesses the right or title to that benefit*." The court further stated that the "*Medicare proxy fixes the calculation upon the absolute right to receive an independent and readily defined payment.*" Id. at 275. See also *Legacy Emanuel Hosp. & Health Ctr. v. Shalala*, 97 F.3d 1261, 1264 (9th Cir. 1996), in which the court noted that use of the term "entitled" refers to 'the absolute right to . . . payment.'" 97 F.3d at 1265 (quoting *Jewish Hospital*).

26.     This is also consistent with the Secretary's interpretation of whether a patient is entitled to benefits under the new Part D drug benefit program. CMS has stated as follows in this regard:

> *In other contexts, we generally have interpreted the concept of "entitled" to benefits to mean that an individual has met all of the necessary requirements*

9

> *for a benefit (that is, is eligible for the benefit), and has actually applied for and been granted coverage. \*\*\* Accordingly, we will deem an individual "entitled" to Part A, and thus a Part D eligible individual, if the individual is eligible for benefits under Part A, and has actually applied for and been granted coverage under Part A.*

70 Fed. Reg. 4194, 4202 (Jan. 28, 2005).

27.     By definition, no payment can be made for EB days under Part A, and therefore a patient cannot be said to be entitled to such payment.  Indeed, the Secretary has explicitly conceded that there is no entitlement to Part A benefits for EB days with respect to the Medicare DSH adjustment for "Medicare dependent, small rural hospital[s]." See 42 U.S.C. 1395ww(d)(5)(G)(iv)(IV).

28.     In a 1990 final rule, the Secretary stated that individuals are "*entitled to benefits under [Medicare] part A*" only when they are entitled to have their medical services paid for under Medicare part A. The rule states that *"[e]ntitlement to payment under part A ceases after the beneficiary has used 90 days in a benefit period and has either exhausted the lifetime reserve days or elected not to use available lifetime reserve days."* 55 Fed. Reg. 35990, 35996 (Sept. 4, 1990). But *"[s]ince patients who have exhausted their part A benefits are no longer entitled to payment under part A,"* the Secretary concluded that, *"we do not believe such stays should be counted"* in the Medicare fraction. Id.

29.     The same reasoning applies to MSP days in which payment is made by the primary payor, and not the Medicare program.  In such cases, the absence of a Part

A payment clearly means that an individual is not "entitled" to such payment. Indeed, inpatient psychiatric hospital and skilled nursing care that is paid for by a primary payer is not counted against the number of inpatient care days available to the beneficiary under Medicare Part A. 42 C.F.R. § 411.30(a). Presumably, these days would be counted against a beneficiary's available benefit days if the beneficiary was "entitled" to payment for those days from Medicare.  Moreover, the conditional payments which may be made under the MSP rules do not establish an "absolute, independent" right to payment under Part A." *Jewish Hosp. v. Secretary of Health & Human Servs*.

30.    The revised matching methodology mandated by CMS 1498-R also does not address the matching deficiencies identified by the federal district court in *Baystate Medical Center v. Leavitt,* 545 F. Supp. 2d 20, *as amended,* 587 F. Supp. 2d 37, 44 (D.D.C. 2008).  Under the revised matching methodology mandated under CMS 1498-R, the Medicare Enrollment Database (EDB) will be used for the purpose of matching social security numbers of individuals entitled to Medicare benefits to individuals who are also receiving SSI benefits.

31.    However, information in the EDB is not retrievable by individual social security numbers. The Federal Register Privacy Act notices states that information in the EDB is retrievable by Health Insurance Claim (HIC) number or name search. The official description of the EDB states that the records in the system

11

include the "*individual's health insurance numbers, name, geographic location,*

*race/ethnicity, sex, and date of birth*." There is no indication from the Federal

Register notices that Social Security numbers are included in the EDB. See 67 Fed.

Reg. 3203, January 23, 2002; 73 Fed. Reg. 10249, February 26, 2008.

32.     As a result, CMS 1498-R does not address one of the key matching

deficiencies identified by the district court in *Baystate*, i.e., the failure to match

Medicare and SSI records on the basis of Social Security numbers.

33.     Further, records in the EDB are maintained for only a period of 15 years. As

the cost years in this case go back further than 15 years, the revised matching

process contemplated by CMS 1498-R cannot possibly be implemented in this

case.

34.     Moreover, there are substantive deficiencies in the records maintained by the

Social Security Administration (SSA) which CMS 1498-R fails to address.  CMS

states that "*Codes beginning with the letter "S" reflect records that are in a*

*"suspended" status and, according to SSA, do not represent individuals who are*

*entitled to SSI benefits.*" The S codes will be changed to an active code upon the

making of a retroactive entitlement determination. However, this change is only

reflected on SSA's records for the month in which the retroactive SSI payment is

actually made, and not for any prior months which were in a suspended status.

Thus, the match will identify entitlement only for the month in which the

retroactive payment is actually made, and not for any prior months which the retroactive payment was intended to cover.

35.    Similarly, Code S-06 is applied where the payment was suspended because "recipient's address is unknown". The fact that a recipient's address is unknown is not a reason for denying payment under the applicable regulations.  An otherwise eligible individual is "entitled" to SSI benefits unless the reason for non-payment is one of the reasons specified in the applicable regulations. See 20 C.F.R. §§ 416.207 – 416.216. As the fact that a recipient's address is unknown is not one of the reasons specified in 20 C.F.R. §§ 416.207 – 416.216, these individuals should be placed in an active code status, so that the revised matching program will include them in the SSI fraction.  Once again, CMS 1498-R does not address this deficiency in the process of formulating the SSI fraction.

**PROCEDURAL INVALIDITY OF CMS 1498-R**

36.    CMS 1498-R purports to divest the Board of jurisdiction over the categories of appeals covered by that Ruling.  However, this policy is incompatible with the requirement that the Board remand cases subject to CMS 1498-R back to the intermediary for re-computation of the SSI fraction.

37.    It is well established that once a tribunal has determined that it lacks jurisdiction over a matter, its only option is to dismiss without prejudice. Under the Secretary's regulations, a dismissal for lack of jurisdiction is a final decision which

is immediately subject to judicial review, while a remand is an interlocutory

decision which is not immediately appealable. See 42 C.F.R. § 405.1875(e)(4)(iii)

(decision by the Administrator remanding a matter to the Board for further

proceedings [i]s not a final decision for purposes of judicial review). See also 42

C.F.R. § 405.1877(b)(3)(ii) (precluding judicial review of an Administrator's

remand order).

38.    Accordingly, CMS 1498-R is procedurally invalid because it purports to

divest the Board of jurisdiction, while at the same time requiring the Board to

remand to the intermediary.

39.    Moreover, the Secretary exceeded the scope of her statutory authority in

promulgating a carte blanche rule which purports to divest the Board of

jurisdiction over the three categories of appeals subject to CMS 1498-R.  The

PRRB has the inherent right as an administrative tribunal created by Congress to

make determinations as to its own jurisdiction under the facts of each specific case.

The Secretary's preemption of the PRRB's prerogative to determine its own

jurisdiction constituted a violation of the organic statute under which the Board

operates.  See 42 U.S.C. §1395oo.

40.    CMS Ruling 1498-R purports to divest the Board of jurisdiction based on

the premise that including all "non-covered" days in the SSI fraction eliminates

any "controversy" concerning this issue, and thereby renders "moot" all pending

appeals.  However, plaintiffs in this case are claiming that "non-covered" days

should be excluded from both the SSI fraction and the Medicaid fraction, or

alternatively included in the Medicaid fraction, but excluded from the SSI fraction.

As a result, CMS Ruling 1498-R does not eliminate the "controversy" concerning

whether non-covered days should be included in the SSI or the Medicaid fraction.

41.     Additionally, the Secretary's authority under 42 U.S.C. §1395oo is limited

to "reversal, affirmance, or modification" of a Board decision.  This language does

not encompass the authority to order the Board to remand back to the intermediary,

as required by Ruling 1498-R.  The Board is also not given the authority under 42

U.S.C. §1395oo to order a remand back to the intermediary.

## CMS 1498-R WAS INVALIDLY PROMULGATED

42.     The publication requirements of the Medicare Act also provide that "*no rule,*

*requirement, or other statement of policy that establishes or changes a substantive*

*legal standard governing the scope of benefits, the payment for services, or the*

*eligibility of individuals, entities, or organizations to furnish or receive services*

*shall take effect unless it is promulgated by the Secretary by regulation.*"  42

U.S.C. § 1395hh(a)(2). The Medicare Act also requires the Secretary to publish in

the Federal Register, a list of all manual instructions, interpretative rules,

statements of policy, and guidelines of general applicability. 42 U.S.C. §

1395hh(c). The Freedom of Information Act ("FOIA") similarly requires an

agency to publish in the Federal Register statements of general policy and interpretations of general applicability. 5 U.S.C. §552(a)(1)(D).

43.     The policy contained in CMS 1498-R falls within the ambit of the publication requirements of 42 U.S.C. § 1395hh(a)(2) and/or 1395hh(c), as well as 5 U.S.C. §552(a)(1)(D).  The Secretary's failure to publish CMS Ruling 1498-R until after the cost years at issue in this case was a violation of these requirements, and the Secretary is therefore precluded from applying the interpretation contained in CMS 1498-R to the Plaintiffs in this case.  42 U.S.C. § 1395hh(e); 5 U.S.C. §552(a)(1); 5 U.S.C. §552(a)(2).

## COUNT I

44.     The allegations in Paragraphs 1-43 are incorporated as if fully set forth herein.

45.     CMS Ruling 1498-R requires the inclusion of non-covered inpatient hospital days in the SSI fraction, including MSP and EB days.  Inclusion of these days in the SSI fraction is illegal because it is contrary to the plain language of the statute, and is also inconsistent with the Secretary's policy and practice during the time periods relevant to this appeal.

46.     The Board's decision dated October 28, 2015 remanding the Plaintiffs' appeals back to the intermediary for inclusion of non-covered days in the SSI

fraction, as required by CMS Ruling 1498-R, was arbitrary and capricious and otherwise not in accordance with law.  5 U.S.C. §706(2)(A).

## COUNT II

47.    The allegations in Paragraphs 1-46 are incorporated as if fully set forth herein.

48.    CMS 1498-R is substantively invalid because it fails to address the matching deficiencies outlined in the *Baystate* decision, such as the failure to use Social Security numbers in the matching process.

49.    CMS Ruling 1498-R is substantively invalid because the revised matching process fails to take into consideration SSI beneficiaries who are entitled to SSI, but whose payments are in suspense or other non-pay status.

50.    CMS Ruling 1498-R is substantively invalid because under the revised matching process, individuals are "entitled" to SSI only when they actually receive a SSI payment, whereas individuals are deemed "entitled" to Medicare even if they do not receive any payment from Medicare.

51.    CMS Ruling 1498-R is substantively invalid because individuals whose SSI benefits are retroactively awarded will be captured in the matching process only in the month in which the retroactive payment is actually made, and not in the prior months that the retroactive payment was intended to cover.

52.    CMS Ruling 1498-R is substantively invalid because the SSA no longer

maintains records pertaining to the SSI eligibility of the Plaintiffs' inpatients as a

result of the SSA's record retention policy.

53.    The PRRB's decision remanding the Plaintiffs' appeals back to the

intermediary to re-compute the SSI fraction using the revised matching

methodology referred to in that Ruling was arbitrary and capricious and otherwise

not in accordance with law.  5 U.S.C. §706(2)(A).

## COUNT III

54.    The allegations in Paragraphs 1-53 are incorporated as if fully set forth

herein.

55.    CMS Ruling 1498-R is invalid in that it (a) purports to divest the Board of

jurisdiction over the present appeal in a manner not authorized by the Board's

organic statute; (b) requires remand to the intermediary when the Board's organic

statute does not authorize such remands; and (c) is based on the flawed premise

that the Ruling renders "*moot*" pending appeals related to the SSI fraction.

56.    The PRRB's decisions remanding the Plaintiffs' appeals back to the

intermediary as required by CMS Ruling 1498-R was arbitrary and capricious and

otherwise not in accordance with law.  5 U.S.C. §706(2)(A).

## COUNT IV

18

57.     The allegations in Paragraphs 1-56 are incorporated as if fully set forth herein.

58.     Failure to make timely publication of CMS 1498-R in the Federal Register constituted a violation of the notice and comment requirements of 42 U.S.C. § 1395hh(a)(2) and the Administrative Procedures Act.  Further, failure to make timely publication of CMS 1498-R in the Federal Register constitutes a violation of 42 U.S.C. §1395hh(c) and 5 U.S.C. §552(a)(1)(D), which requires publication of manual instructions, interpretative rules, statements of policy, and guidelines of general applicability.

59.     Accordingly, the enforcement of CMS Ruling 1498-R against plaintiffs was arbitrary and capricious and otherwise not in accordance with law.

## COUNT V

60.     The allegations in Paragraphs 1-59 are incorporated as if fully set forth herein.

61.     The remands contemplated by CMS Ruling 1498-R effectively frustrate through delay the judicial review procedures authorized under the 42 U.S.C. §1395oo(f).  Some of the cost years at issue in this case are ten years old.  As a result of CMS 1498-R, Plaintiffs have still not received the final agency determination required to trigger their judicial review rights.   Delays of this magnitude effectively equate to a denial of procedural due process.

19

62.     Accordingly, the enforcement of CMS Ruling 1498-R against Plaintiffs was

arbitrary and capricious and otherwise not in accordance with law (5 U.S.C.

§706(2)(A)), as well as in violation of the Due Process clause of the U.S.

Constitution.

## COUNT VI

63.     The allegations in Paragraphs 1-62 are incorporated as if fully set forth

herein.

64.     Pursuant to 5 U.S.C. §706(2)(A), this Court is authorized to "compel agency

action unlawfully withheld or unreasonably delayed."  The agency action being

withheld in this case is a final agency decision sufficient to trigger the judicial

review rights created by 42 U.S.C. §1395oo(f).  The Secretary has a non-

discretionary duty to issue final agency decisions within a reasonable period of

time.  As there are no alternative legal remedies available to Plaintiffs, a writ of

mandamus pursuant to 5 U.S.C. §706(2)(A) and 28 U.S.C. § 1361 should be issued

for the purpose of directing the Secretary to issue a prompt final agency decision.

## COUNT VII

65.     The allegations in Paragraphs 1-64 are incorporated as if fully set forth

herein.

66.     The Secretary has a non-discretionary obligation to furnish Plaintiffs with

access to the MEDPAR data, which would permit it to identify additional patients

20

entitled to SSI.  There are no legal remedies available to Plaintiffs to compel

disclosure by the Secretary of the MEDPAR data.  As such, Plaintiffs are entitled

to a writ of mandamus pursuant to 28 U.S.C. § 1361, directing the Secretary to

furnish such MEDPAR data to the Plaintiff.

67.    The Secretary also has a non-discretionary duty to provide access to SSI

entitlement data so that the Plaintiffs can compute their own SSI fractions.  Section

951 of the Medicare Prescription Drug, Improvement and Modernization Act

("MMA") of 2003, Pub. L. No. 108-173 (2003) required HHS to arrange by

December 8, 2004 to furnish hospitals with the data necessary to compute the

number of patient days used in calculating the disproportionate patient percentage.

There are no legal remedies available to Plaintiffs to compel disclosure by the

Secretary of the data falling within the purview of Section 951 of the MMA. As

such, Plaintiffs are entitled to a writ of mandamus pursuant to 28 U.S.C. §1361,

directing the Secretary to furnish to Plaintiffs such data as is required so that

Plaintiffs may compute their own SSI fractions.

## COUNT VIII

68.    The allegations in Paragraphs 1-67 are incorporated as if fully set forth

herein.

69.    CMS is prohibited from directing the intermediary to re-open an

intermediary final determination where, as in this case, there has been a "change of

21

legal interpretation or policy by CMS in a ... CMS Ruling….whether made in response to judicial precedent or otherwise." 42 C.F.R. §§ 405.1885.   These regulations further prohibit reopening of any intermediary determination more than three years after that determination has been issued.  Id.

70.     The PRRB's action in remanding pursuant to CMS 1498-R was arbitrary, capricious and in violation of law because the reopening in this case resulted from a change in legal interpretation as reflected in that Ruling, and because the determination being reopened was more than three years old at the time of reopening. 5 U.S.C. §706(2)(A).

## COUNT IX

71.     The allegations in Paragraphs 1-70 are incorporated as if fully set forth herein.

72.     This appeal involves whether the SSI fraction as computed by CMS can be reconciled with the records received by the Providers from the State of Washington.  The appeal stated that the SSI ratios were incorrectly computed because those ratios did not reflect all of the patients entitled to SSI benefits. This allegation was based in part upon information received by the Providers from the State of Washington, which indicated that more of the Provider's patients were entitled to SSI benefits than was otherwise reflected in the SSI fraction.

73.     This appeal does not involve deficiencies in the data matching process, and this appeal therefore does not fall within the ambit of CMS 1498-R.

74.     To the extent that this appeal involves both issues falling with the ambit of CMS 1498-R and issues falling outside of the ambit of CMS 1498-R, the PRRB should have remanded the issues falling within the scope of 1498-R and retained jurisdiction over the other issues.  Instead, the PRRB remanded both issues falling within and outside of the scope of CMS 1498-R.

75.     As such, the PRRB's remand of this appeal to the intermediary pursuant to the provisions of CMS 1498-R was arbitrary and capricious and otherwise not in accordance with law.  5 U.S.C. §706(2)(A).

## COUNT X

76.     The allegations in Paragraphs 1-75 are incorporated as if fully set forth herein.

77.     The March 16, 2012 publication by CMS of the revised SSI ratios for fiscal years 2006-2009 constituted a "*final determination of the Secretary*" with the meaning of 42 U.S.C. §1395oo(a)(1)(A)(ii).

78.     As such, the PRRB's dismissal of this appeal as premature was arbitrary and capricious and otherwise not in accordance with law.  5 U.S.C. §706(2)(A).

## COUNT XI

79.     The allegations in Paragraphs 1-78 are incorporated as if fully set forth herein.

80.     The SSI ratios for fiscal years 2006-2009 published on March 16, 2012 by CMS included Part C days.

81.     Inclusion of Part C days in these SSI ratios was arbitrary and capricious because the regulations requiring same have been vacated by the U.S. Court of Appeals for the D.C. Circuit in *Allina Health Services v. Sebelius*, 746 F.3d 1102 (D.C. Cir. 2014).

82.     Inclusion of Part C days in these SSI ratios was arbitrary and capricious because *Allina's* vacatur of the regulations mandated restoration of the status quo ante of exclusion of Part C days from the SSI fraction, and inclusion of those days in the Medicare fraction.  *See* 5 U.S.C. §553(c) and 42 U.S.C. §1395hh(a)(2).

83.     Inclusion of Part C days in these SSI ratios was arbitrary and capricious because such action was unlawful in the absence of new notice and comment rulemaking.  *See* 5 U.S.C. §553(c) and 42 U.S.C. §1395hh(a)(2).

84.     Inclusion of Part C days in these SSI ratios was arbitrary and capricious because such an interpretation was not a logical outgrowth of the Secretary's proposed rules.  42 U.S.C. §1395hh(a)(4). *Kooritzky v. Reich, 17* F.3d 1509 (D.C. Cir. 1994).

85.    Inclusion of Part C days in these SSI ratios was arbitrary and capricious because these ratios were not published in the Federal Register as required by 42 U.S.C. §1395hh(c)(1) and 5 U.S.C. §552(a)(1)(D).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs prays:

(a) For an order reversing and setting aside the decisions of the PRRB;

(b) For an order declaring that CMS Ruling 1498-R is both substantively and procedurally invalid, and that the PRRB's action in remanding the Plaintiffs' appeals back to the intermediary pursuant to CMS 1498-R is arbitrary and capricious and contrary to law;

(c)  For an order requiring the Secretary to promptly issue a final agency decision sufficient to trigger the Plaintiffs' judicial review rights;

(d)  For an order directing the Secretary to provide MEDPAR data to the Plaintiffs and directing the Secretary to provide such additional data so as to enable the Plaintiffs to compute their own SSI fractions;

(e) For the costs of this suit incurred by Plaintiffs, for attorney fees, and for interest pursuant to 42 U.S.C. §1395oo(f)(2);

(f) For such other and further relief as the Court may deem just and proper under the circumstances.

Dated: December 24, 2015

Respectfully submitted,

/s/ Jeffrey A. Lovitky

_____
D.C. Bar Number 404834
1776 K Street, N.W., Suite 800
Washington D.C. 20036
Tel: (202) 429-3393
Fax: (202) 318-4013
Email: Lovitky@aol.com
ATTORNEY FOR PLAINTIFFS